

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN 11, TEXAS

*overruled O-5792 in part*

**WILL WILSON**
ATTORNEY GENERAL

February 10, 1958

Hon. William A. Harrison
Commissioner of Insurance
International Life Building
Austin, Texas

Dear Sir:

Opinion No. WW-360

Re: Required minimum capi-
tal and surplus of a life insur-
ance company issuing stock on
a no-par value basis.

You have requested an opinion of this office concerning the capital and surplus requirements of life insurance companies issuing no-par value stock pursuant to the provisions of Article 3.02a of the Texas Insurance Code. Your questions are as follows:

1. What is the required minimum capital, as that term is used and understood in insurance and corporate laws, of a life insurance company which divides and issues all of its shares on a no-par value basis?

2. What is the required minimum surplus, if any, of a life insurance company which divides and issues its shares on a no-par value basis?

3. If in answer to Question No. 1, you have stated that the minimum capital of a no-par life insurance company is $250,000, is there any requirement that such no-par com- pany have additional funds as surplus, and if so, how much is required?

4. If a life insurance company divides and issues all of its shares on a no-par value basis, and does not designate a definite stated capital in its articles of incorporation, what figure or amount of money should we consider and use as the capital for such no-par company? Is the capital of such a no-par company the total value of every dollar re- ceived for the issued no-par shares, or is the capital some other figure, such as the minimum capital, if any, contained in your answer to Question No. 1 above?

Section 5 of Article 3.02 of the Texas Insurance Code as amended in 1955 provides that the "capital stock" of a life insurance company organized thereunder should not be less than $100,000.00, all of which capital stock must be fully subscribed and paid up at the time the articles of incorpora- tion are filed and that such company should in addition thereto have not less than $100,000.00 surplus. It is thereafter provided that "such minimum capital and surplus shall, at the time of incorporation, consist only of (the

types of property described). . .After the granting of charter, the surplus may be invested as otherwise provided in this Code. Notwithstanding any other provisions of this Code, such minimum capital shall at all times be maintained in cash or in the classes of investments described in this article."

Section 2 of Article 3.02 as amended in 1955, is in part as follows:

"Section 2. From and after the effective date of this Act the capital and surplus requirements of paragraph five of Section 1 of Article 3.02 of this Code shall be the minimum capital and surplus requirements for any company which is subject to the provisions of Chapter 3 of this Code as amended;
. . ."

Section 9 of Article 3.39 as added in 1955 is in part as follows:

"9. Notwithstanding other provisions of this Article 3.39 of this Code, the capital and surplus of a company hereafter organized under Article 3.02 of this Code . . . shall, at the time of incorporation, consist only of (types of property described); and the minimum capital of a company hereafter organized under said Article 3.02 . . . shall at all times be maintained in cash or in the same classes of investment. After the granting of charter the surplus in excess of such one hundred thousand ($100,000) dollars may be invested as otherwise provided in this Code for stock companies."

Article 3.60 of the Texas Insurance Code as amended in 1955 limits the permissible impairment of the capital stock of a life insurance company There is no comparable provision in the Code requiring a company to maintain the minimum surplus added into the law in 1955 so we conclude that after the incorporation a life insurance company is not required to maintain such minimum surplus.

The provisions of Article 3.02a as added in 1955 are as follows:

"(a) The stock of any life, health or accident insurance company organized or operating under the provisions of this chapter may be divided or converted into shares of either par value or no-par value, or both, all of which shall be fully paid and non-assessable. If divided or converted into shares of par value, each share shall be for not less than One ($1,00) Dollar nor more than One Hundred ($100.00) Dollars. If divided or converted into shares of no-par value, every such share shall be equal in all respects to every other such share. At the time of filing of original charter or any amendment of an existing charter authorizing the issuance of stock with no-par value, the company shall file a statement under oath with the Board of Insurance Commissioners setting forth the number of shares without par

value subscribed and the actual consideration received by the company for such shares. Provided, however, that the stockholders of any such company authorizing the issuance of its stock without nominal or par value, shall be required in good faith to subscribe and pay for at least fifty (50%) percent of the authorized shares to be issued without nominal or par value, before said corporation shall be chartered or have its charter amended so as to authorize the issuance of shares without nominal or par value; and provided further, that in no event shall the amount so paid be less than Two Hundred Fifty Thousand ($250,000.00) Dollars."

Prior to 1955, life insurance companies were authorized to issue no-par stock under the terms of Article 2.07 of the Texas Insurance Code. So far as material here, there is no substantial distinction between Article 3.02a and Article 2.07 as it applied to life insurance companies prior to the 1955 Act.

All of the text writers draw a distinction between the term "capital" and the term "capital stock". The term "capital stock" signifies primarily the number of shares authorized to be subscribed, and which have actually been subscribed, multiplied by the face or par value of each such share. The capital stock of a corporation is thus a fixed quantity regardless of gains or losses and unaffected by fluctuation in the value of the corporate assets or the shares themselves. While the capital of the corporation may for some purposes be considered in law as the equivalent of "capital stock", the term "capital" is ordinarily used to designate the assets of the corporation, regardless of their source, utilized for the conduct of the corporate business and for the purpose of deriving gains and profits. 10 Tex.Jur. 669. In spite of the distinction normally drawn between the terms "capital stock" and the term "capital", the Legislature has apparently not intended such a distinction to apply since it has used the terms interchangeably in the passages here under discussion.

It is apparent that in the case of a company issuing no-par stock, the definition normally given to the term "capital stock" cannot be applied as this term is defined to be the number of shares authorized and subscribed and multiplied by the face or par value of such shares.

In the case of American Refining Company v. Staples, 260 S.W. 614, affirmed 269 S. W. 420, the Court of Civil Appeals defined the term "authorized capital stock" as it applied to a no-par corporation in connection with a franchise tax imposed on foreign corporations. The court held that the "capital stock" of such a corporation consisted of the aggregate amount of the contributions of its shareholders to the corporate entity. The Court suggested on page 617 of its opinion that the principle of "stating capital" may be utilized so as to allocate a portion of the consideration received to capital with the excess applying to surplus. This later proposition is supported by Dean Hildebrand who states that a corporation may

fix how much of the purchase price received from the sale of no-par stock is to be capital and how much paid-in surplus. 2 Hildebrand Texas Corporations, 351.

While the authorities in Texas are sparse, we believe the proper rule to be, in view of the above and further there being nothing inconsistent with such rule, that the total consideration received by a corporation from its stockholders for the sale of its no-par stock constitutes "capital" of such a company but that such a corporation may fix or state the portion of the consideration received which shall be its capital (or "stated capital") with the amount received in excess being "surplus". Our view is further fortified by the recognition of these principles by the Legislature in the Business Corporation Act passed in 1955 which expressly makes the rules applicable to corporations governed thereby.

Article 3.02a does not specify "minimum capital" or "minimum surplus" for a company issuing no-par stock and there is no express provision that the minimum capital and surplus requirements of Article 3.02 are to be considered applicable. Article 3.02a requires that the stockholders of a life insurance company issuing no-par stock subscribe and pay for at least 50% of the authorized shares of no-par stock before such corporation be chartered or have its charter amended so as to authorize the issuance of no-par stock and that in no event should the amount so paid be less than $250,000.00. The $250,000.00 minimum required to be paid before incorporation or amendment could not be said to be the "minimum capital" of such a company as the minimum amount required to be paid under the terms of Article 3.02a may exceed $250,000.00. If a life insurance company authorizes 1,000,000 shares of no-par stock to be sold for $1.00 per share, the minimum amount required to be paid in before the amendment or original incorporation could be effective would be $500,000.00 since the stockholders must in good faith subscribe and pay for at least 50% of the authorized shares.

We believe that the Legislature intended in the enactment of Senate Bill 15 in the 1955 Legislature that requirements as to minimum capital and surplus should apply uniformly to all stock life insurance companie In Section 2 of Article 3.02 hereinabove set forth, it is stated that "the capital and surplus requirements of paragraph 5 of Section 1 of Article 3.02 of this Code shall be the minimum capital and surplus requiremen for any company which is subject to the provisions of Chapter 3 of this Code as amended."

In this connection it should be pointed out that the amendments to Article 3.02, to Article 3.39 adding section 9, and the provisions enacting Article 3.02a were all contained in the same legislation, Senate Bil 15, Acts 1955, 54th Legislature, page 916. For this and the other reaso hereinabove given we hold that a life insurance company which issues no-par stock is subject to the same minimum capital and minimum sur plus as a life insurance company issuing only par value stock.

To the extent that Opinion No. 0-5792 may be construed to hold that the minimum capital of a life insurance company issuing no-par stock is $250,000.00, it is overruled.

In response to your first question, we hold that the required minimum capital of a life insurance company issuing no-par stock is $100,000.00 as required by the terms of Article 3.02 of the Texas Insurance Code as amended.

In response to your second question, we hold that the required minimum surplus of such a life insurance company at the time of its incorporation is $100,000.00.

Since we have not stated that the minimum capital of a no-par company is $250,000, we do not answer your third question.

In response to your fourth question, the capital of a no-par life insurance company which does not designate a stated capital is the total consideration received by the corporation from its stockholders for its stock.

We would again point out that before a no-par life insurance company may be chartered or before a life insurance company may have its charter amended so as to authorize the issuance of no-par shares, the stockholders of such company must have in good faith subscribed and paid for at least 50% of the authorized shares to be issued without par value, which amount so paid may not be less than $250,000.00. Therefore, at the time of incorporation or at the time of such a charter amendment, such a company must have funds over and above the minimum capital of $100,000.00 and minimum surplus of $100,000.00, which additional funds in the aggregate with the minimum capital and surplus will equal the consideration fixed to be paid for 50% of the authorized no-par shares, which aggregate amount may not be less than $250,000.00. Such additional funds may be assigned to either capital or surplus.

## SUMMARY

The required minimum capital of a life insurance company issuing no-par stock pursuant to Article 3.02a is $100,000.00 and its required minimum surplus is $100,000.00; provided, however, that at the time such a company is incorporated, or before its charter may be amended so as to authorize the issuance of no-par shares, the stockholders of such a company must have in good faith subscribed and paid for 50% of the authorized no-par shares, which amount so paid may not be less than $250,000.00. The funds in excess of the minimum capital and surplus necessary to aggregate the consideration fixed to be paid for 50% of the authorized no-par shares may be allocated to either capital or surplus.

The capital of a no-par life insurance company which does not designate a stated capital is the total consideration received by the corporation from its stockholders for its stock.

Yours very truly,

WILL WILSON
Attorney General of Texas

By Fred B. Werkenthin
Assistant

APPROVED:

OPINION COMMITTEE:

Geo. P. Blackburn, Chairman
Morgan Nesbitt
John Minton
Wayland Rivers

REVIEWED FOR THE ATTORNEY GENERAL

BY:  W. V. Geppert